United States District Court
Southern District of Texas
**ENTERED**
April 29, 2019
David J. Bradley, Clerk

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF TEXAS
# BROWNSVILLE DIVISION

| | | |
|---|---|---|
| JAMES THATCHER, | § | |
| Plaintiff | § | |
| | § | |
| v. | § | Civil Action No. 1:19-cv-10 |
| | § | |
| DARGEL BOATS, INC., ET AL., | § | |
| Defendants | § | |

## MAGISTRATE JUDGE'S
## REPORT AND RECOMMENDATION

The Court is in receipt of Plaintiff James Thatcher's Opposed Second Amended Motion to Remand (hereinafter, Thatcher's "Motion to Remand") and his Opposed Second Amended Motion for Leave to File First Amended Complaint (hereinafter, Thatcher's "Motion to Amend"). Dkt. Nos. 12 and 13. Thatcher argues that remand to state court is appropriate because complete diversity of citizenship is lacking between himself and Defendant Dargel Boats, Inc., (hereinafter, "DBI"); therefore, the Court lacks subject matter jurisdiction over this lawsuit. Dkt. No. 12 at 4. Additionally, Thatcher seeks leave to amend his Original Petition to add another Texas defendant, "Glen French d/b/a/ Explorer Boats" (hereinafter, "Explorer Boats"), and to add a negligence cause of action against both DBI and Explorer Boats. Dkt. No. 13 at 2. Thatcher argues that the addition of Explorer Boats will remove all bases for diversity jurisdiction and require the Court to grant his Motion to Remand. Dkt. No. 12 at 6.

Defendant Yamaha Motor Corporation, U.S.A. (hereinafter, "YMUS") has filed responses to both of Thatcher's Motions, arguing that the Motions should be denied,

and that DBI should be dismissed from this lawsuit as an improperly sued or "joined" defendant.  Dkt. Nos. 14 and 15.  DBI has filed responses which join YMUS's requests for relief.  Dkt. Nos. 16 and 17.  For the reasons provided below, it is recommended that the Court: (1) **DISMISS** DBI from this civil action; (2) **DENY** Thatcher's Motion to Amend (Dkt. No. 13); and (3) **DENY** Thatcher's Motion to Remand (Dkt. No. 12).

## I. Jurisdiction

The party removing an action bears the burden of establishing that federal jurisdiction is present.  *Howery v. Allstate Ins. C*o., 243 F.3d 912, 916 (5th Cir. 2001).  All doubts concerning whether removal jurisdiction is proper must be resolved in favor of remand.  *Acuna v. Brown & Root, Inc.*, 200 F.3d 335, 339 (5th Cir. 2000).  Pursuant to 28 U.S.C. § 1332, a federal court will not have subject matter jurisdiction unless: (1) "the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs," and (2) complete diversity of citizenship is present between the parties.  28 U.S.C. § 1332 ("Diversity of citizenship; amount in controversy; costs").  As detailed below, this Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332 because the amount in controversy exceeds $75,000, and there is complete diversity of citizenship between the properly joined parties in this lawsuit.

## II. Background

This civil action arose out of a boating accident occurring on or about October 28, 2016, on the Arroyo Colorado River in Cameron County, Texas.  *See* Dkt.

No. 1-4 at 3.   Plaintiff James Thatcher alleges that he was ejected overboard while riding as a passenger in a "2000 Explorer" 19-foot boat (hereinafter, the "Vessel"), with a "2003 Yamaha 150hp outboard motor" (hereinafter, the "Motor").  *Id*. at 3-4. Thatcher claims that the boat's operator, Dennis Goldsberry, was gently docking the Vessel when the stern of the Vessel "suddenly and unexpectedly lifted out of the water, causing the Vessel to lose control and to jerk violently to the side in a spinning motion."  *Id*. at 4.  As a result, Thatcher was thrown overboard and subsequently cut by the Vessel's propellers, which severely lacerated his right arm.  *Id*. ("After Plaintiff James Thatcher entered the water, the Vessel continued its spinning motion.  As the stern spun around towards his location, he lifted up his arms to shield himself from the Motor's blades.  Unfortunately, the Motor severely lacerated James's body, in particular his right arm.").  Thatcher's Original Petition (hereinafter, "Complaint") lists a "products liability" cause of action against YMUS and DBI, and alleges, among other things, that the Vessel and Motor were defectively designed, manufactured, and marketed.  *Id*. at 5.

Defendant YMUS removed this action from the 107th Judicial District Court of Cameron County, Texas on January 25, 2019.  Dkt. No. 1 at 1.  YMUS's Notice of Removal states that removal is proper pursuant to 28 U.S.C. § 1441(a) because complete diversity of citizenship exists and the amount in controversy is satisfied.  *Id*. at 5-6.  YMUS explains that, although Thatcher and DBI are non-diverse Texas citizens, Thatcher has improperly joined DBI.  *Id*. at 4.  Because DBI has no connection whatsoever with the Vessel or the Motor, YMUS asks the Court to "pierce

the pleadings" and dismiss DBI from this lawsuit.  *Id*. at 4; Dkt. No. 14 at 10-11; Dkt. No. 15 at 9.  Additionally, because YMUS believes that Thatcher's proposed pleading amendments would be futile, YMUS asks the Court to deny Thatcher's Motion to Amend and Motion to Remand.  Dkt. No. 14 at 10-11; Dkt. No. 15 at 9.

DBI joins YMUS's requests.  Dkt. Nos. 16 and 17.  Thatcher has not filed replies to the responses filed by YMUS or DBI.

## III.  Statement of the Issues

Thatcher's two Motions require the Court to answer three main questions: (1) whether to dismiss DBI from this lawsuit; (2) whether to allow Thatcher to amend his Complaint; and (3) whether to grant Thatcher's request for remand.  On the record before the Court, answering the first question requires the Court to pierce the pleadings to determine if Thatcher improperly joined DBI for purposes of defeating diversity jurisdiction.   Answering the second question requires the Court to determine if Thatcher's proposed amendments would be futile.  Answering the third question requires the Court to determine if complete diversity of citizenship exists between the parties.  The Court will address these three questions in the order listed.

## IV.  Discussion

**A.  Whether to Dismiss DBI from this Lawsuit**.  To show that a plaintiff has improperly joined a non-diverse defendant in order to stay in state court, the removing party must demonstrate: (1) that the plaintiff committed actual fraud in

the pleading of jurisdictional facts, or (2) that the plaintiff cannot establish a cause of action against the non-diverse defendant in state court. *Cumpian v. Alcoa World Alumina, L.L.C.*, 910 F.3d 216, 219–20 (5th Cir. 2018); *Travis v. Irby*, 326 F.3d 644, 647 (5th Cir. 2003); *Griggs v. State Farm Lloyds*, 181 F.3d 694, 698 (5th Cir. 1999). The party seeking to show improper joinder "bears a heavy burden." *Smallwood v. Ill. Cent. R. Co.*, 385 F.3d 568, 574 (5th Cir. 2004) (en banc); *Slaughter v. Progressive Cty. Mut. Ins. Co.*, No. CV 4:18-04528, 2019 WL 460925, at *2 (S.D. Tex. Feb. 6, 2019) (same). Where the removing party does not allege the presence of actual fraud in the pleadings,[1] the removing party must show that the plaintiff has "no possibility of recovery" against the non-diverse/in-state defendant. *Smallwood v. Ill. Cent. R. Co.*, 385 F.3d 568, 573. Put another way, the removing party must show that "there is no reasonable basis for the district court to predict that the plaintiff might be able to recover against" the non-diverse defendant. *Id.*

Determining whether the removing party has met its burden requires the reviewing court to look solely at the plaintiff's state court petition to see if it can survive a Rule 12(b)(6) challenge for failure to state a claim. *Davidson v. Ga.-Pac., L.L.C.*, 819 F.3d 758, 765 (5th Cir. 2016). If the plaintiff can survive a Rule 12(b)(6) challenge, a finding of no improper joinder will ordinarily be required. *Smallwood*, 385 F.3d at 573. "However, where a complaint states a claim that satisfies 12(b)(6), but has 'misstated or omitted discrete facts that would determine the propriety of joinder . . . the district court may, in its discretion, pierce the pleadings and conduct

---

[1] YMUS acknowledges that it has not alleged actual fraud in the pleading of jurisdictional facts. Dkt. No. 14 at 3.

a summary inquiry.'" *Mumfrey v. CVS Pharmacy, Inc.*, 719 F.3d 392, 401 (5th Cir. 2013) (quoting *Smallwood*, 385 F.3d at 573).

> This "summary inquiry" is *not* akin to "the no-evidence summary judgment standard." *See Cumpian*, 910 F.3d at 220. Rather, the "defendant *must* put forward evidence that would *negate a possibility* of liability on the part of" the nondiverse or in-state defendant. *Smallwood*, 385 F.3d at 573-74 (emphasis added). Moreover, "the evidence that is dispositive" must relate to "facts that could be easily disproved if not true." *Cumpian*, 910 F.3d at 221.

*Slaughter v. Progressive Cty. Mut. Ins. Co.*, No. CV 4:18-04528, 2019 WL 460925, at *2.

Here, Thatcher's live Complaint purports to assert a "products liability" cause of action against DBI. Dkt. No. 1-4 at 5. In support of this cause of action, his Complaint provides as follows:

> The Defendants [YMUS and DBI] each designed, manufactured, marketed, and/or sold the Vessel and/or the Motor. The Vessel and Motor were defectively designed and/or manufactured. These defects existed at the time the Vessel and Motor left each of the Defendants' respective control and made the Vessel and Motor unreasonably dangerous and defective. Even though safer alternative designs existed, none were utilized. These defects were a producing cause of the damages at issue.
>
> The Defendants also failed to give adequate warnings of the dangers of the Vessel and Motor which were known by the Defendants (or by the application of reasonably developed human skill and foresight should have been known by the Defendants), and failed to give adequate instructions to avoid such dangers, which failures rendered the Vessel and Motor unreasonably safe. These dangers resulted from the design, condition, and construction of the Vessel and Motor. These failures were producing causes of the damages at issue.

Dkt. No. 1-4 at 5.

YMUS asks the Court to pierce the pleadings and conduct a summary inquiry on the question of whether Thatcher improperly joined DBI. Dkt. No. 14 at 4. In support of this request, YMUS has submitted a photo of the Vessel's "capacity plate identifying the boat manufacturer as 'Explorer Boats.'" Dkt. No. 15 at 3 (referencing the photo depicted in Dkt. No. 15-1 at 1). *See also* Dkt. No. 15-3 at 1 (verifying that the photo depicted in Dkt. No. 15-1 "is a true and correct copy of a photo" that YMUS's counsel received from Thatcher's counsel on January 4, 2019). Additionally, YMUS has submitted the signed, sworn Declaration of Cleve M. Ford (hereinafter, "Ford's Declaration"), along with accompanying exhibits. Dkt. No. 14-1 at 1-9.

In his Declaration, Ford states that he has been the president of DBI since it formed in 2006. Dkt. No. 14-1 at 1. He claims that, as president and custodian of DBI's records, he is familiar with DBI's business and the "Contract of Sale of Assets of Business ('Asset Sale Agreement')" between DBI and Explorer Boats. *Id*. Pursuant to that Agreement, he avers that DBI bought Explorer Boats' assets on March 26, 2009. *Id*. Having read Thatcher's Complaint, Ford contends that Thatcher has misstated DBI's involvement with the Vessel and the Motor because DBI had nothing to do with the Vessel or the Motor. *Id*. at 1-2. Specifically, Ford states that DBI did not design, manufacture, market, advertise, sell, resell, repair, warrant, blueprint, assemble, test, or install the Vessel, the Motor, or "any aspect or component part" of the Vessel or Motor. Dkt. No. 14-1 at 1-2. Ford adds that DBI also did not give warnings, make representations, provided training, or provide maintenance in

connection with the Vessel, the Motor, or any aspect or component part of the Vessel or Motor. *Id.*

In fact, Ford states that DBI "was not even in existence until 2006 — approximately six years after" the Vessel was manufactured, and three years after the Motor was manufactured. Dkt. No. 14-1 at 2. Ford notes that DBI has no record of ever having performed work on the Vessel or the Motor. *Id.* He also points out that the Asset Sale Agreement makes clear that Explorer Boats "expressly retained all liabilities and warranty work" when it sold its assets to DBI. *Id.* at 3. Consistent with Ford's Declaration, the verified copy of the Asset Sale Agreement submitted by YMUS does confirm that Explorer Boats "will retain the liability, including all guaranty work for boats sold prior to" the closing of the March 26, 2009 sale of Explorer Boats' assets. *Id.* at 6-7. The Asset Sale Agreement also states that the Agreement "constitutes the sole and only agreement" between DBI and Explorer Boats. *Id.* at 7.

Comparing the statements in Thatcher's Complaint with the statements in Ford's Declaration reveals that Ford has explicitly disputed each discrete fact Thatcher proposes as a basis for liability against DBI. Many of Ford's statements also relate to facts that could be easily disproved if not true. *See Cumpian*, 910 F.3d at 221 ("the evidence that is dispositive" must relate to "facts that could be easily disproved if not true."). For example, Ford's position as the president of DBI, and DBI's effective Secretary of State registration date of December 14, 2006, are both

matters of public record.   *See* https://mycpa.cpa.state.tx.us/coa/coaSearch.do (last
visited on April 10, 2019).

Further, rather than disputing YMUS's evidence, DBI has itself informed
Thatcher that it is not a proper defendant in this lawsuit.   *See* Dkt. No. 15-2 at 1-4.
In a letter dated October 31, 2018, DBI's counsel informed Thatcher's counsel that
DBI was not in existence when the Vessel and Motor were constructed.   Dkt. No. 15-
2 at 1.   DBI's counsel explained that, according to records from the Texas Parks and
Wildlife Department, and facts obtained from Thatcher, the Vessel was built by
Explorer Boats "in 1999 as a 2000 year model."   *Id*.   DBI's counsel stated that DBI
had not designed, manufactured, or marketed the Vessel, and had not performed any
work on the Vessel or Motor.   *Id*. at 1-2.   DBI's counsel also suggested that, to the
extent that Thatcher has a claim against the Vessel's manufacturer, that claim would
be a time-barred claim against Explorer Boats.   *Id*. at 2. ("If you have any claim
against the manufacturer of this boat, it would be against Glen French d/b/a/ Explorer
Boats not Dargel Boats, Inc.  However, even if there was a legitimate cause of action
against Mr. French d/b/a Explorer Boats it appears that such claim would be barred
by the 15 year Statue of Repose, Tex. Civ. P. Rem. Code 16.012(b).") (errors in
original).

Thatcher argues that, even if DBI did not manufacture the Vessel or Motor, he
can still hold DBI liable in state court as a successor in interest to Explorer Boats.
Dkt. No. 12 at 5.  In support of this argument he relies upon Sections 12 and 13 of

the Restatement (Third) of Torts. *Id.* at 4-5. Section 12 of the Restatement (Third)

provides:

> A successor corporation or other business entity that acquires assets of
> a predecessor corporation or other business entity is subject to liability
> for harm to persons or property caused by a defective product sold or
> otherwise distributed commercially by the predecessor if the acquisition:
>
>> (a) is accompanied by an agreement for the successor to assume
>> such liability; or
>>
>> (b) results from a fraudulent conveyance to escape liability for
>> the debts or liabilities of the predecessor; or
>>
>> (c) constitutes a consolidation or merger with the predecessor; or
>>
>> (d) results in the successor becoming a continuation of the
>> predecessor.

Restatement (Third) of Torts: Products Liability § 12 (1998). In a similar vein,

Section 13 provides:

> A successor corporation or other business entity that acquires assets of
> a predecessor corporation or other business entity, whether or not liable
> under the rule stated in § 12, is subject to liability for harm to persons
> or property caused by the successor's failure to warn of a risk created by
> a product sold or distributed by the predecessor if: (1) the successor
> undertakes or agrees to provide services for maintenance or repair of the
> product or enters into a similar relationship with purchasers of the
> predecessor's products giving rise to actual or potential economic
> advantage to the successor, and (2) a reasonable person in the position
> of the successor would provide a warning.

Restatement (Third) of Torts: Products Liability § 13 (1998).

YMUS responds by asserting that no Texas court has adopted Sections 12 or

13 of the Third Restatement of Torts. Dkt. No. 14 at p. 7, note 2, and p. 9, note 3.

Instead, the Texas Legislature has enacted Article 5.10(B)(1) of the Texas Business

Corporation Act, and its successor, Section 10.254(b) of the Texas Business

Organizations Code.  *See* TEX. BUS. CORP. ACT ANN. § 5.10(B)(1) (Vernon Supp. 2000) and TEX. BUS. ORGS. CODE § 10.254(b) (Vernon 2011). *See also* Acosta, *A Vanishing Remedy: Questioning the Constitutionality of the Current State of Sale of Assets, Post-Dissolution Tort Liability in Texas*, 60 Baylor L. Rev. 656 (Spring 2008) (referring to "T.B.C.A. Article 5.10(B)(2)" as the predecessor to "B.O.C. section 10.254").  Section 10.254(b) provides that: "[e]xcept as otherwise expressly provided by another statute, a person acquiring property described by this section may not be held responsible or liable for a liability or obligation of the transferring domestic entity that is not expressly assumed by the person."  TEX. BUS. ORGS. CODE § 10.254(b) (Vernon 2011).

Although "[s]ome confusion regarding the law appears to have come from the Texas legislature re-codifying section 10.254 from its predecessor statute in the Texas Business & Commerce Code," the "substantive law remains the same."  *In re 1701 Commerce, LLC*, 511 B.R. 812, 823 (Bankr. N.D. Tex. 2014) (citing *E–Quest Mgmt. v. Shaw*, 433 S.W.3d 18, 23–24, No. 01–11–00296, 2013 WL 1281767, at *5 (Tex. App.– Houston [1st Dist.] 2013, pet. denied)).  *See also Ford, Bacon & Davis, L.L.C. v. Travelers Ins*. Co., 635 F.3d 734, 737 (5th Cir. 2011) (noting that TEX. BUS. ORGS. CODE § 10.254(b) replaced "the old provision" of Article 5.10(B) "with similar language.").

In rejection of the Third Restatement, Texas courts and federal courts applying Texas law have interpreted Section 10.254(b) and its predecessor as eliminating successor liability under the "de factor merger" doctrine, the "mere continuation"

theory, the "product line" theory, and the "fraudulent transfer" theory. *See Lockheed Martin Corp. v. Gordon*, 16 S.W.3d 127, 135, n. 6 (Tex. App. – Houston [1st Dist.] 2000, pet. denied) (citing TEX. BUS. CORP. ACT ANN. 5.10(B)(1) (Vernon Supp. 2000); *Mudgett v. Paxson Mach. Co.*, 709 S.W.2d 755, 758–59 (Corpus Christi 1986, writ ref'd n.r.e.); *Griggs v. Capitol Mach. Works*, 690 S.W.2d 287, 294 (Tex.App.— Austin), writ ref'd n.r.e. per curiam, 701 S.W.2d 238 (Tex. 1985)); *C.M. Asfahl Agency v. Tensor, Inc.*, 135 S.W.3d 768, 792 (Tex. App. 2004) ("In enacting article 5.10(B), the legislature rejected three exceptions to the majority rule of successor non-liability under the Third Restatement of the Law of Torts for Product Liability, as follows: the "de facto merger" doctrine, the "mere continuation" theory, and the "product line" theory.") (citing *Lockheed Martin Corp.*, 16 S.W.3d at 134–35); *In re 1701 Commerce, LLC*, 511 B.R. 812, 823–24 ("This court, like other courts, has been unable to locate a Texas statute providing that a fraudulent transfer creates successor liability. Thus, only express assumption is grounds for successor liability under Texas law.") (citations omitted); *Farouk Sys., Inc. v. AG Glob. Prod., LLC*, No. CV H-15-0465, 2016 WL 1322315, at *7 (S.D. Tex. Apr. 5, 2016) (noting that, pursuant to Section 10.254, "the only means by which successor liability may be imposed under Texas law against a transferee of assets are "(1) express assumption or (2) liability conferred by another statute.") (citing *In re 1701 Commerce, LLC*, 511 B.R. 812, 824; *Koll Real Estate Grp., Inc. v. Howard*, 130 S.W.3d 308, 315 n.11 (Tex. App. – Houston [14th Dist.] 2004, no pet.)); *Stegall v. Casillas*, No. 2:16-CV-381, 2016 WL 6397668, at *4 (S.D. Tex. Oct. 28, 2016) ("Texas law holds that absent an express assumption of liability, an entity

that acquires another's assets is not a successor and cannot be held liable for a liability that is not expressly assumed.") (citing *E–quest Mgmt., L.L.C. v. Shaw*, 433 S.W.3d 18, 23–4; *Allied Home Mortg. Corp. v. Donovan*, 830 F.Supp.2d 223, 233 (S.D. Tex. 2011)).[2]

Here, DBI did not expressly assume Explore Boats' liability. Dkt. No. 14-1 at 6-7. The Asset Sale Agreement between DBI and Explorer Boats explicitly states that Explorer Boats "will retain the liability, including all guaranty work for boats sold prior to" the closing of the March 26, 2009 sale. *Id.* Therefore, Thatcher has not shown a possibility of holding DBI liable as a successor in interest under Texas law, nor has he identified any other provision which would allow him to prevail against DBI in state court. Viewed collectively, then, YMUS's evidence negates "a possibility of liability" on the part of DBI and shows that Thatcher has misstated or omitted discrete facts bearing upon the propriety of DBI's joinder. *See Smallwood*, 385 F.3d at 573-74. Accordingly, the Court finds that DBI was improperly joined and recommends that DBI be dismissed from this civil action.

**B.   Whether to Allow Thatcher to Amend His Complaint**.   Thatcher suggests that he is seeking leave to amend to add Explorer Boats as a defendant in this lawsuit as "a consequence" of reading YMUS's "removal paperwork," because that paperwork identified Explorer Boats as the actual manufacturer of the Vessel. Dkt. No. 13 at 1-2. Noting that his Complaint named "a number of unknown

---

[2] To the extent that conflicting opinions exist with respect to particular theories of successor liability, the Court does not delve into those opinions here because Thatcher's reliance upon Sections 12 and 13 of the Third Restatement is conclusory. *See* Dkt. No. 12 at 5-6.

retailers," Thatcher indicates that he was unaware of the manufacturer's identity prior to filing his Complaint. *Id*. at 1. In requesting leave to amend, Thatcher also seeks to assert a negligence cause of action against each of the defendants named in his proposed First Amended Complaint. *Id*. at 2. Thatcher's proposed First Amended Complaint names DBI, Explorer Boats, YMUS, and "Unknown Retailers 1-9" as defendants. Dkt. No. 13-1 at 1.[3] As noted above, Thatcher states that DBI and Explorer Boats are non-diverse, in-state defendants. *Id*.

Section 1447(e) of Title 28 governs when a party seeks to join a non-diverse defendant after the case has been removed to federal court. *Cobb v. Delta Exports, Inc.*, 186 F.3d 675, 677 (5th Cir. 1999) (citing 28 U.S.C. § 1447(e)). Section 1447(e) provides that, "[i]f after removal the plaintiff seeks to join additional defendants whose joinder would destroy subject matter jurisdiction, the court may deny joinder, or permit joinder and remand the action to the State court." 28 U.S.C. § 1447(e). In *Hensgens v. Deere & Co.*, the Fifth Circuit noted that the decision to allow the joinder of the non-diverse party lies within the court's "sound discretion." 833 F.2d 1179, 1182 (5th Cir. 1987). In exercising this discretion, the Fifth Circuit instructed courts to balance "the danger of parallel federal/state proceedings with the inherent dangers of inconsistent results and the waste of judicial resources" against the diverse defendant's "interest in retaining the federal forum." *Id*. at 1182. The *Hensgens* Court identified four factors to consider when weighing these competing interests:

---

[3] Thatcher's request to add a negligence cause of action against DBI should be denied because DBI should be dismissed as an improperly joined defendant. Thatcher has not shown a possibility of prevailing against DBI under a negligence theory because, as noted above, he has not shown a possibility of prevailing against DBI under any theory.

"(1) the extent to which the purpose of the amendment is to defeat federal jurisdiction; (2) whether the plaintiff has been dilatory in asking for the amendment; (3) whether the plaintiff will be significantly injured if the amendment is not allowed; and (4) any other factors bearing on the equities." *Agyei v. Endurance Power Products, Inc.*, 198 F.Supp.3d 764, 770 (S.D.Tex., 2016) (citing *Hensgens*, 833 F.2d at 1182; *Hawthorne Land Co. v. Occidental Chem. Corp.*, 431 F.3d 221, 227 (5th Cir. 2005); and *Tillman v. CSX Transp., Inc.*, 929 F.2d 1023, 1029 & n. 11 (5th Cir. 1991)).

Taking these factors out of order, the Court first considers whether Thatcher has been dilatory in moving to amend. As noted above, the boating accident giving rise to this lawsuit occurred on or about October 28, 2016. *See* Dkt. No. 1-4 at 3. The statute of limitations in Texas for negligence and strict products liability is two years. TEX. CIV. PRAC. & REM. CODE § 16.003(a) (Vernon 2002); *Burlington N. & Santa Fe Ry. Co. v. Poole Chem. Co.*, 419 F.3d 355, 360 (5th Cir. 2005) ("The Texas statute of limitations for negligence and strict liability is two years. TEX. CIV. PRAC. & REM.CODE ANN. § 16.003(a) (Vernon 2002)"); *Winters v. Diamond Shamrock Chem. Co.*, 941 F. Supp. 617, 621 (E.D. Tex. 1996) *aff'd*, 149 F.3d 387 (5th Cir. 1998) ("In Texas, causes of action for personal injuries arising out of . . . strict products liability claims are governed by a two-year statute of limitations."); *Sparling v. Doyle*, No. EP-13-CV-00323-DCG, 2014 WL 12489986, at *2–3 (W.D. Tex. July 10, 2014) (same); *Diamond Beach Owners Ass'n v. Stuart Dean Co.*, No. 3:18-CV-00173, 2018 WL 7081232, at *2 (S.D. Tex. Dec. 19, 2018*), report and recommendation adopted*, No. 3:18-CV-00173, 2019 WL 245462 (S.D. Tex. Jan. 17, 2019) (Texas statute of

limitations for negligence is two years).  Thatcher filed his Complaint on October 24, 2018, approximately four days before his limitations period expired.  Dkt. No. 1-4 at 1.  In a letter dated October 31, 2018, counsel for DBI notified Thatcher that DBI was not a proper defendant because DBI had no connection to the Vessel or the Motor.  Dkt. No. 15-2 at 1.  In that letter, DBI's counsel informed Thatcher that the Vessel's "capacity plate" coupled with records from the Texas Parks and Wildlife Department indicated that Explorer Boats built the Vessel.  *Id.*

Thatcher did not move to amend his Complaint to add Explorer Boats as a defendant until February 25, 2019.  Dkt. No. 8.[4]  Thus, despite being notified of Explorer Boats' identity as the Vessel's possible manufacturer on October 31, 2018, Thatcher waited nearly four months to seek leave to amend his Complaint.  Further, Thatcher only sought leave to amend after YMUS removed this action and contested DBI's status as a proper defendant.

"[C]ourts generally find that a plaintiff is not dilatory in seeking to amend a complaint when no trial or pre-trial dates were scheduled and no significant activity beyond the pleading stage has occurred[.]"  *Multi-Shot, LLC v. B & T Rentals, Inc.*, No. CIV. A. H-09-3283, 2010 WL 376373, at *9 (S.D. Tex. Jan. 26, 2010) (internal citations and quotations omitted).  Still, courts apply a different analysis when a plaintiff seeks to add a non-diverse defendant shortly after a defendant alleges that diversity jurisdiction exists and removes the case to federal court.  *Id.*  "In such a

---

[4]  The Court denied Thatcher's first two motions to amend and first two motions to remand as moot as he subsequently filed his instant amended Motion to Amend and Motion to Remand.  *See* Dkt. No. 21.

circumstance, '[a] delay of two months after the filing of the original complaint or almost thirty days after the notice of removal has been found dilatory.'" *Id*. (quoting *Irigoyen v. State Farm Lloyds*, No. 03–0324, 2004 WL 398553, at *4 (S.D. Tex. Jan. 5, 2004)).  In *Multi-Shot, LLC v. B & T Rentals, Inc.,* the Court found that a motion to amend filed nearly four months after the filing of the action, and two months after removal was dilatory, despite the fact that significant activity had yet to occur in the case and no trial or pretrial dates had been set.  *Id.  See also Ellsworth, LeBlanc & Ellsworth, Inc. v. Strategic Outsourcing, Inc.*, No. 03–0613, 2003 WL 21783304, at *3 (E.D.La. July 30, 2003) (plaintiff was dilatory in waiting two months after filing the complaint and almost thirty days after removal before moving to amend); *Phillips v. Delta Airlines, Inc.*, 192 F.Supp.2d 727, 729 (E.D.Tex. 2001) (same).

Thatcher has not filed a reply or otherwise addressed YMUS's arguments concerning his delay in seeking leave to amend.  Critically, Thatcher has also provided no explanation for his failure to seek leave to amend prior to removal. Accordingly, although it is a close call, the Court finds that Thatcher has been dilatory in seeking to amend his Complaint.  The second of the four *Hensgens* factors weighs against granting Thatcher's Motion to Amend.

With respect to the third *Hensgens* factor, the Court must consider whether Thatcher will be prejudiced if he is not allowed to amend his Complaint.  Denying a motion to amend does not prejudice a plaintiff when the proposed amendment seeks to add a futile claim.  *Briggs v. Mississippi*, 331 F.3d 499, 508 (5th Cir. 2003) (citing *Lewis v. Fresne*, 252 F.3d 352, 360 n. 7 (5th Cir. 2001)).  A court may consider a claim

against a new defendant futile when it is barred by the statute of limitations. *Winzer v. Kaufman Cty.*, 916 F.3d 464, 471 (5th Cir. 2019) (citing *Whitt v. Stephens Cty.*, 529 F.3d 278, 282 (5th Cir. 2008)); *Crostley v. Lamar Cty., Texas*, 717 F.3d 410, 422 (5th Cir. 2013) ("[T]he bar created by the statute of limitations for a claim against Keele means that an amendment adding him as a defendant would indeed be futile.  We thus affirm the denial of Appellants' motion for leave to amend as it relates to Keele.").

Here, Thatcher seeks to add negligence and product liability claims against Explorer Boats.  Dkt. No. 13-1 at 3-4.  As noted above, the statute of limitations in Texas for negligence and products liability is two years.  TEX. CIV. PRAC. & REM. CODE § 16.003(a) (Vernon 2002); *Burlington N. & Santa Fe Ry. Co. v. Poole Chem. Co.*, 419 F.3d 355, 360.  The accident giving rise to this lawsuit occurred on or about October 28, 2016.  *See* Dkt. No. 1-4 at 3.  Thatcher filed his Complaint on October 24, 2018, approximately four days before his limitations period expired.  Dkt. No. 1-4 at 1.  Thatcher did not move to amend is Complaint to add Explorer Boats as a Defendant until February 25, 2019 — almost four months past the expiration of his limitations period.  Dkt. No. 8.

Consequently, Thatcher's claims against Explorer Boats will be time-barred unless a basis exists to: (1) equitably toll the limitations period; (2) estop the limitations period; or (3) find that Thatcher's amendment "relates back" to filing of his Complaint pursuant to Rule 15(c) of the Federal Rules of Civil Procedure.  *See Whitt v. Stephens Cty.*, 529 F.3d 278, 282 (citing FED. R. CIV. P. 15(c)); *Crostley v.*

*Lamar Cty., Texas*, 717 F.3d 410, 419–22 (discussing the relation-back doctrine, equitable tolling, and estoppel in connection with a statute of limitations bar).[5]  In relevant part, Federal Rule of Civil Procedure 15(c) provides:

> (1) When an Amendment Relates Back. An amendment to a pleading relates back to the date of the original pleading when:
>
>> (A) the law that provides the applicable statute of limitations allows relation back;
>>
>> (B) the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out--or attempted to be set out--in the original pleading; or
>>
>> (C) the amendment changes the party or the naming of the party against whom a claim is asserted, if Rule 15(c)(1)(B) is satisfied and if, within the period provided by Rule 4(m) for serving the summons and complaint, the party to be brought in by amendment:
>>
>>> (i) received such notice of the action that it will not be prejudiced in defending on the merits; and
>>>
>>> (ii) knew or should have known that the action would have been brought against it, but for a mistake concerning the proper party's identity.

FED. R. CIV. P. 15(c)(1).

Thatcher has alleged no facts indicating that he can satisfy Rule 15(c)(1)(A) or (C)(i) or (ii).  First, an amendment will relate back under Rule 15(c)(1)(A) when "'the law that provides the applicable statute of limitations allows relation back.'" *Balle v. Nueces Cty., Texas*, 690 F. App'x 847, 850 (5th Cir. 2017) (quoting FED. R. CIV. P. 15(c)(1)(A)).  Section 16.003(a) of the Texas Civil Practice and Remedies Code, provides the applicable limitations period for personal injury suits, and it "is silent

---

[5]  Estoppel and equitable tolling are not relevant here because Thatcher makes no argument for the application of either doctrine.

on the issue of tolling and relation back." *Id.* As the Texas Legislature could have provided for tolling or relation back, as they have done when designating the limitations period for certain sex crimes, Texas courts have presumed that the Legislature's silence on the issue was purposeful. *Id.* (citing *Riston v. Doe*, 161 S.W.3d 525, 529 (Tex. App.—Houston [14th Dist.] 2004, pet. denied)). Accordingly, as Thatcher has not demonstrated that Section 16.003(a) of the Texas Civil Practice and Remedies Code allows for the relation back of his proposed amendment, he has not satisfied the requirement of Rule 15(c)(1)(A). *See id.*

Second, Thatcher has not satisfied the requirements of Rule 15(c)(1)(C)(i) or (ii). Thatcher suggests that he was unaware of Explorer Boats' identity as the Vessel's potential manufacture prior to receiving YMUS's removal paperwork. Dkt. No. 13 at 1-2. He also indicates that he named "a number of unknown retailers" because he did not know the manufacturer's identity prior to filing his Complaint. *Id.* at 1. However, "'Rule 15(c) does not allow an amended complaint adding new defendants to relate back if the newly-added defendants were not named originally because the plaintiff did not know their identities.'" *Jacobsen v. Osborne*, 133 F.3d 315, 319-22 (5th Cir. 1998) (quoting *Barrow v. Wethersfield Police Dep't*, 66 F.3d 466, 470 (2d Cir. 1995)); *Winzer v. Kaufman Cty.*, 916 F.3d 464, 470 (same). Rule 15(c) is meant "to correct a mistake concerning the identity of the party[,]" it is not meant to allow relation-back for the additional of unknown defendants. *Jacobsen v. Osborne*, 133 F.3d 315, 321.

The Fifth Circuit has also held that "'an amendment to substitute a named party for a John Doe does not relate back under Rule 15(c).'" *Winzer*, 916 F.3d 464, 471 (quoting *Whitt*, 529 F.3d 278, 282-83). Thus, to the extent that Thatcher has sued "unknown retailers," he cannot now substitute Explorer Boats for the retailers after the limitations period has expired. *See id.* ("[T]o the extent Appellants sued 'unknown officers,' they cannot use these 'John Doe' claims to now substitute in Cuellar and Huddleston after the limitations period."). Because Thatcher's proposed amendment adding claims against Explorer Boats would be time-barred, he has not shown that he will be significantly injured if the Court denies his Motion to Amend.[6] The third of the four *Hensgens* factors weighs against granting Thatcher's Motion to Amend.

This brings the Court to the first and fourth *Hensgens* factors. Defendants argue that Thatcher is attempting to amend his Complaint solely to defeat diversity jurisdiction. Dkt. No. 15 at 5-6; Dkt. No. 17 at 1, 4, 6. This argument is persuasive given that Thatcher did not move to amend until after removal. This argument is also persuasive given Thatcher's failure to provide any other alternative explanation. If the Court were to grant Thatcher's Motion to Amend, the Court would have no choice but to remand this action back to state court, thus depriving Defendants of their requested federal forum. *See Hensgens*, 833 F.2d 1179, 1181 ("Although it is true that most subsequent events will not defeat jurisdiction, addition of a nondiverse defendant will"); *Rouf v. Cricket Commc'ns, Inc.*, No. H–13–2778, 2013 WL 6079255, at *2 (S.D.Tex. Nov. 19, 2013) ("An amendment to the complaint that adds a non-

---

[6] As DBI points out, Thatcher's claims against Explorer Boats might also be barred by the Texas 15-year Statue of Repose. *See* Dkt. No. 17 at 5-6.

diverse party after removal will defeat jurisdiction, and the court must remand.")
*Agyei v. Endurance Power Products, Inc.*, 198 F.Supp.3d 764, 769 (same).[7]

Thatcher's Motion to Amend is four paragraphs long.  Dkt. No. 13.  In those four paragraphs he provides no authority to support his request and offers no facts to tip the balance of equities in his favor.  The Court, therefore, finds that review under all four *Hensgens* factors weighs against granting Thatcher's Motion to Amend.  It is recommended that his Motion to Amend be denied.

**C.   Whether to Grant Thatcher's Request for Remand**.   It is recommended that the Court deny Thatcher's Motion to Amend and dismiss DBI from this suit.  Adoption of this recommendation will result in a Complaint against a single diverse defendant, YMUS.  Because complete diversity of citizenship exists between Thatcher and YMUS, Thatcher's Motion to Remand should be denied.

## V.  Recommendation

For the foregoing reasons, it is recommended that the Court: (1) **DISMISS** DBI from this civil action; (2) **DENY** Thatcher's Motion to Amend (Dkt. No. 13); and (3) **DENY** Thatcher's Motion to Remand (Dkt. No. 12).

## VI.  Notice to Parties

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within

---

[7]   The *Agyei* Court identified some contrary case law but noted that this case law is not binding precedent in this Circuit.  *Agyei*., 198 F.Supp.3d 764, 770, n. 4.

fourteen days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object. *Douglass v. United Services Auto. Ass'n*, 79 F.3d 1415 (5th Cir. 1996).

Signed this 29th day of April, 2019.

_____

Ignacio Torteya, III
United States Magistrate Judge